

**FILED**

March 09, 2021
ST-2019-CR-00168
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | CASE NO. ST-2019-CR-00168 |
| | ) | |
| Plaintiff, | ) | 14 V.I.C. § 605(a) and 604 e(15), |
| vs. | ) | (16), (19), (32) |
| | ) | 14 V.I.C. § 1083(a)(1) |
| **ALAIN RODRIGUEZ RIONDA,** | ) | 14 V.I.C. § 2101(a) |
| | ) | 14 V.I.C. § 791(1)(2) |
| Defendant. | ) | 14 V.I.C. § 834(2) |
| _____ | ) | |

Cite as 2021 VI Super 31

### MEMORANDUM OPINION

¶1     **THIS MATTER** is before the Court on Defendant, Alain Rodriguez Rionda's Motion Against Excessive Monetary Conditions of Bond Imposed in Violation of Defendant's Constitutional Rights, filed December 11, 2020. The People oppose Rodriguez's motion. For the reasons set forth herein, the defendant's motion will be denied.

### FACTS

¶2     Alain Rodriguez Rionda (hereinafter "Rodriguez") is a permanent resident of the United States. He was born on October 16, 1979 in Cardenas, Cuba, but has resided in the U.S. for 25 years. At the time of his arrest, he was a resident of Miami, Florida. He had traveled to the U.S. Virgin Islands in March 2019 to work for a roofing company. On July 24, 2019, he was arrested at Cyril E. King Airport in St. Thomas, U.S. Virgin Islands[1] pursuant to an arrest warrant[2] and thereafter charged with violations of the Criminally Influenced and Corrupt Organizations Act,

---

[1] At the time of his arrest, Rodriguez possessed a one-way ticket to Miami, F.L.
[2] The arrest warrant was issued by the Superior Court on July 17, 2019.

grand larceny,[3] possession of stolen property,[4] forgery,[5] and obtaining money by false pretense.[6] He is accused of stealing blank checks from the Virgin Islands Port Authority (VIPA) and unlawfully writing numerous checks on its Marine-Revenue account to himself and others between April and June 2019. The checks allegedly total more than $90,000.00. He has not been able to post bail since his arrest in July 2019, and has now been in custody for approximately 21 months.[7] At his initial hearing, bail was set at $250,000.00 cash or property, as Rodriguez was deemed a serious flight risk.[8]

¶3 On August 7, 2019, Rodriguez filed a motion for release pursuant to Virgin Islands Rule of Criminal Procedure 5-1(b). In his motion, Rodriguez alleged that he has no substantial funds which may be deposited as surety and thus requested that he be released upon the posting of property or an unsecured bond of $25,000.00.[9] During arraignment before a magistrate judge on August 8, 2019, the Court denied Rodriguez's motion without prejudice, and noted for the record Rodriguez's lack of ties to the community. Defendant has not renewed his motion to reduce bail. Instead, Rodriguez filed the instant motion with the Court arguing that his continued incarceration is a violation of the Eighth Amendment rights and requesting that he be released from the Bureau of Correction ("BOC") on an unsecured bond of $25,000.00.

---

[3] Rodriguez is charged with grand larceny in violation of 14 V.I.C. § 1018(a)(1).

[4] Rodriguez is charged with possession of stolen property in violation of 14 V.I.C. § 2101(a).

[5] Rodriguez is charged with forgery in violation of 14 V.I.C. § 791(1)(2).

[6] Rodriguez is charged with forgery in violation of 14 V.I.C. § 834(2).

[7] Rodriguez was advised of his rights on July 25, 2019 and arraigned on August 8, 2019.

[8] The Court also imposed the following conditions following Rodriguez's arrest: he is not to violate any laws of the U.S. Virgin Islands or the United States; he shall not leave the St. Thomas/St. John district unless first obtaining written permission from this Court; he shall not have contact with any potential witnesses in his case; and, as a condition of his release, he must surrender all travel documents, including his permanent resident card.

[9] In his motion, Rodriguez noted that he conferred with the assistant attorney general regarding his request, as required under V.I. R. CRIM. P. 5-1(g), and she opposes the motion.

## LEGAL STANDARD

¶4      The Eighth Amendment of the United States Constitution[10] provides, in relevant part, "Excessive bail shall not be required. . . ." This rule is made applicable to the Virgin Islands through section 3 of the Revised Organic Act of 1954, Revised Organic Act of 1954, § 3, 48 U.S.C. §§ 1561 (1984), reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1),[11] and is enshrined in Rule 5-1(b) of the Virgin Islands Rules of Criminal Procedure, V.I. R. CRIM. P. 5-1(b) ("Excessive bail shall not be required.").

¶5      The prohibition against excessive bail[12] requires that the government set bail at an amount sufficient to ensure the defendant's appearance at trial. *Reynolds v. U.S.*, 80 S.Ct. 30, 32 (1959) ("The purpose of bail is to insure the defendant's appearance and submission to the judgment of the court.); *Stack v. Boyle*, 342 U.S. 1, 3 (1951) (citing *U.S. v. Motlow*, 10 F.2d 657 (1926)) (finding that bail set at an amount higher than to assure the defendant's presence at trial is excessive); *Cartois v. People*, 61 V.I. 257, 260 (V.I. 2014) (quoting *Tobal v. People*, 51 V.I. 147, 155 n. 4 (V.I. 2009) (alteration in original) ("The purpose of bail ... is to assure the defendant's attendance

---

[10] The Eighth Amendment is applicable to the Virgin Islands through the Revised Organic Act. *Karpouzis v. Gov't of the V.I.*, 36 V.I. 132, 139, n. 14 (D.V.I. 1997) ("'Excessive bail shall not be required,'" and the Eighth Amendment and the Due Process Clause of the 14th Amendment are made applicable to the Virgin Islands under section 3 of the Revised Organic Act of 1954."); *Todmann v. People*, 57 V.I. 540, 545 n. 3 (V.I. 2012) ("Congress has extended the Eighth Amendment, as well as the Due Process Clause of the Fourteenth Amendment, to the Virgin Islands through section 3 of the Revised Organic Act of 1954) ; *Murrell v. People*, 54 V.I. 338, 351 n.6 (V.I. 2010); *Tobal v. People*, 51 V.I. 147, 151 (V.I. 2009); *Browne v. People*, 50 V.I. 241, 256 (V.I. 2008).

[11] "The Revised Organic Act of 1954, 48 U.S.C. § 1541 et seq., is the Virgin Islands' equivalent of a state constitution that serves as the basic charter of government in the territory." *Todmann*, 57 V.I. at 546 (alteration in original) (internal quotation marks omitted) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993)).

[12] All defendants charged with crimes the Virgin Islands, except those charged with first degree murder, have a constitutional right to bail under the Revised Organic Act. *Williams v. People*, 53 V.I. 514, 532 (V.I. 2010) ("We emphasize that defendants charged with crimes in local Virgin Islands courts have a constitutional right to bail in sufficient sureties. . . ."); *Tobal*, 51 V.I. at 161. ("[A]ll defendants—other than those charged with first degree murder where the proof is evidence or the presumption is great—are bailable by sufficient sureties.").

in court, and it cannot be a means of punishing the defendant. . . .")); *People v. Ford*, 49 V.I. 270, 280 (V.I. Super. Ct. 2008) (citing *Bandy v. U.S.*, 81 S.Ct. 197 (1960) ("It is settled that the purpose of bail is not to punish the [d]efendant before he is tried and convicted, but simply to ensure his appearance at trial and submission to the judgment of the Court."); *People of the V.I., Simmonds*, 48 V.I. 320, 324 (V.I. Super. Ct. 2007) (citation omitted) (finding that the purpose of bail has always been to "ensure that the [d]efendant will stand trial" and never to punish the defendant); *People v. Camacho*, 47 V.I. 302, 308 (V.I. Super. Ct. 2005); *but see U.S. v. Himler*, 797 F.2d 156, 159 (3d Cir. 1986) (judicial officers must also consider the threat of danger to the community when determining conditions of pretrial release); *Tobal*, 51 V.I. at 156-57 (collecting cases) ("[J]udges may consider the risk of flight, danger to society, or both when setting conditions on bail, but may not use such considerations to deny bail entirely."). As such, "[a]ny bail or conditions of release that are not tailored to achieve the purpose of bail are considered excessive and therefore unconstitutional." *Cartois*, 61 V.I. at 260 (quoting *Rieara v. People*, 57 V.I. 659, 667 (V.I. 2012) (citing section 3 of the Revised Organic Act)); *see also People v. Cajuste,* No. ST-2016-CR-00328, 2017 WL 679328, at *2 (V.I. Super. Ct. Feb. 15, 2017) (alteration in original) (quoting *People v. Stevens*, 2013 WL 6184062, at *3 (V.I. Super. Ct. Nov. 26, 2013)) ("[T]he plain meaning of 'excessive bail' does not require that it be beyond one's means, only that it be greater than necessary to achieve the purposes for which bail is imposed.)

¶6     To resolve a motion against excessive bail, the Court "must make an individualized determination in order to ensure that the bail is not excessive." *Rieara*, 57 V.I. at 667; *see also Stack*, 342 U.S. at 5 (noting that the court must apply reasonable standards and make a case by case determination); *People v. Saldana*, No. ST-14-CR-F187, 2015 WL 301491, at *4 (V.I. Super. Ct. Jan. 16, 2015) (noting that the Court must make a determination based on "the particular

defendant and case"); *cf. Camacho*, 47 V.I. at 309 (determining the flight risk of the defendant is "the most important factor in setting bail where the offense or offenses charged are statutorily non-dangerous"). The Court uses its discretion in making an individualized determination,[13] but must be well-reasoned in its analysis.[14] *See Stack*, 342 U.S. at 5. Under V.I. R. CRIM. P. 5-1(b), the Court must impose the least restrictive means necessary to reasonably 1) ensure the defendant's presence at trial, 2) protect the community from physical harm, and 3) assure the integrity of the judicial process.[15] Therefore, any bail or conditions of release that are not tailored to ensure the defendant's presence at trial, protect the community from physical harm, and assure the integrity of the judicial process,[16] would be excessive and thus, unconstitutional. *See Stack*, 342 U.S. at 3 (citing *Motlow*, 10 F.2d at 657); *Cartois*, 61 V.I. at 260 (quoting *Rieara*, 57 V.I. at 667 (citing section 3 of the Revised Organic Act)).

¶7       Under V.I. R. CRIM. P. 5-1(b), the least restrictive form of bail is to release the defendant on their own recognizance. V.I. R. CRIM. P. 5-1(b)(1). However, "[w]here the Court finds unsecured personal recognizance inadequate," the Court may order the accused's release upon his posting of an unsecured bail bond in an amount for which he is "fully and personally liable upon failure to appear in court, but which is not secured by any deposit of or lien upon property." V.I.

---

[13] The Court's determination of the accused's "conditions of release rests in the sound discretion of the trial judge." *Saldana*, 2015 WL 301491, at *7 (citing *Rieara*, 57 V.I. at 668 (noting that the Virgin Islands Supreme Court applies an abuse of discretion standard to the trial court's decision)).

[14] Previously, the determination of the amount of bail set by this Court was governed by Superior Court Rule 141. However, this rule was repealed on June 1, 2019. V.I. SUPER. CT. R. 141 (repealed 2019).

[15] "The court shall impose the first of the following conditions of release that will reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process." V.I. R. CRIM. P. 5-1(b).

[16] "The 'integrity of the judicial process,' as that phrase is used in a pretrial release and detention provision of a state constitution, includes more than just situations in which a defendant while free on bond threatens or bribes a witness or falsifies evidence, as the integrity of the judicial process is undercut if the courts do not have effective tools to use where a defendant free on bail commits a further crime." 8 C.J.S. *Bail* § 146 (2008) (quoting *Williams v. Spears*, 814 So.2d 1167, 1170 (Fla. 3d DCA 2002)).

R. CRIM. P. 5-1(b)(2). The Court may also impose restrictions on the defendant's travel, association, or abode during the pre-trial period of release, V.I. R. CRIM. P. 5-1(b)(3), and/or place the defendant in custody of a designated person or organization that agrees to supervise the defendant, V.I. R. CRIM. P. 5-1(b)(4). If the Court finds that none of the above restrictions, or some combination thereof, are adequate, the Court may order the accused to post a secured bail bond, justified by affidavit and under risk of forfeiture, in exchange for his release. V.I. R. CRIM. P. 5-1(b)(5). Whether a form of bail is adequate is based on whether it ensures the presence of the accused at trial, protects the community from risk of physical harm, and assures the integrity of the judicial process, all by the least restrict means necessary. *See* V.I. R. CRIM. P. 5-1(b). If the Court finds that a secured bail bond is inadequate, then the Court may order the accused to post a cash bail bond. V.I. R. CRIM. P. 5-1(b)(6). A cash bail bond may be posted "by a defendant or by another person on [the] defendant's behalf upon [the] condition that such money will be forfeited if the defendant" does not appear at court proceedings or comply with court orders.[17] V.I. R. CRIM. P. 5-1(b)(6).

---

[17] In addition to imposing one or more of the above forms of bail, the Court may also "require a third party custodian to further ensure compliance with the terms of the release and the appearance of the defendant. . . ." V.I. R. CRIM. P. 5-1(d); *e.g, People v. Rodriguez*, No. SX-17-CR-145, 2018 WL 582568, at*5 (V.I. Super. Ct. Jan. 16, 2018) (finding that the defendants' parents were only suitable as co-third-party custodians after hearing testimony that someone would be home 24 hours a day and that the father would be able and willing to pay for electronic monitoring of the defendant at their home); *Cajuste*, 2017 WL 679328, at *4 (approving defendant's request for a third-party custodian having observed her demeanor and heard testimony on her relationship with the defendant, longstanding ties to the Virgin Islands community, and her promise to that he would obey her rules as third-party custodian); *compare People v. Matthew*, 49 V.I. 285, 293 (V.I. Super. Ct. 2008) (denying defendant's requests for two separate third-party custodians after finding that one could not control the defendant and the other would be away for work most of the day and would not be able to monitor the defendant); *Virgin Islands v. Powell*, No. ST-2013-SFL-00005, 2014 WL 1229662, at *4 (V.I. Super. Ct. Mar. 24, 2014) (denying defendant's request for a third-party custodian after finding that the individual would not have her own permanent place of residence, was combative when questioned by the prosecutor, had not been cooperative with the social worker and police in locating the defendant on an unrelated matter). If the Court requires a third-party custodian, the custodian must "fully execute under oath the Third-Party Consent Form before [the] defendant may be released." V.I. R. CRIM. P. 5-1(d).

**ANALYSIS**

¶8     Rodriguez argues that his bail, set in the amount of $250,000, is excessive under the Eight Amendment because it is set at an amount higher than necessary to ensure his appearance at trial. Specifically, Rodriguez alleges that he is indigent and argues that because of indigence, and the high amount at which bail is set, he will be forced to remain in pretrial detention until the conclusion of proceedings. As such, Rodriguez argues that the bond is not set to ensure his presence at trial, but rather a punishment because of his indigence. Rodriguez argues that detaining him for his indigence violates his constitutional right to a fair trial and the presumption of innocence. Under the Eight Amendment and V.I. R. CRIM. P. 5-1(b), Rodriguez argues that the Court is prohibited from setting excessive bail and is required to set bond at a reasonable amount consistent with the interest of ensuring his presence at trial.  Specifically, Rodriguez requests to be released from the Bureau of Corrections upon the posting of an unsecured bond of $25,000.00 and with other such conditions as the Court deems just and proper. Rodriguez argues that his request is reasonable in light of the following facts: that the charges against him involves a nonviolent crime, that he is not at risk of returning to Cuba, and that he agrees to abide by all stay away and no contact conditions ordered by the Court.

¶9     The People argue that Rodriguez's motion is essentially a motion for reduction of bail and that they oppose the motion on the grounds that Rodriguez is a flight risk and a danger to the community. To support their argument, the People cite to Rodriguez's advice of rights hearing, in which the Court stated that it considered the defendant a "serious flight risk" and that he had no ties to the Virgin Islands.

¶10     Determining the excessiveness of bail is not based on a finding that the amount set is beyond the defendant's means, but rather that the amount set is "greater than necessary to achieve

the purposes for which bail is imposed." *Cajuste*, 2017 WL 679328, at \*2 (citing *Stevens*, 2013 WL 6184062, at \*3 (quoting *Galen v. County of Los Angeles*, 477 F.3d 652. 661-62 (9th Cir. 2007)). Insufficient funds with which to pay bail "does not automatically render the bail amount excessive or unconstitutional." *Cajuste*, 2017 WL 679328, at \*2.

### A. Risk of Flight

¶11     Whether bail is set at a level to adequately ensure the defendant's presence at court depends on whether the defendant is a flight risk.[18] *See Tobal*, 51 V.I. at 156-57 (judges take facts, such as the defendant's risk of flight, into consideration when determining the release conditions to be imposed and the bail to be established); *Camacho*, 47 V.I. at 309 (whether defendant is a flight risk is the most important factor to consider where the offenses charged are nonviolent). Whether the defendant is a flight risk is determined by a number of factors that the Court may consider including: the potential length of the defendant's sentence if convicted,[19] prior use of false identities or deceptive means by which the defendant may evade government detection if attempting to flee,[20] the risk of retaliation from others which incentivizes the defendant to flee,[21] the defendant's citizenship status,[22] the defendant's employment status,[23] the defendant's history

---

[18] When the risk of flight is slight, release on one's own recognizance is constitutionally required. *Simmonds*, 48 V.I. at 332 (quoting *U.S. v. Scott*, 450 F.3d, 863, 866 (9th Cir.2006)) (finding that the defendant's indigency and slight risk of flight weighs in favor of his release on his own recognizance).

[19] Where the defendant "faces a length sentence if convicted, the risk of flight is present." *Camacho*, 47 V.I. at 309 (citing *U.S. v. Hollender*, 162 F.Supp. 2d 261, 264 (S.D.N.Y. 2001)) (noting the premise as well-settled); *see also People v. Ford*, 49 V.I. 270, 282 (V.I. Super. Ct. 2008) (discussing a defendant's incentive to flee when the penalties for his alleged crimes are great); *Cajuste*, 2017 WL 679328, at \*4 (the seriousness of the charges weighs against reducing the defendant's bail; *People v. Powell*, No. ST-2013-SFL-00005, 2014 WL 1229662, at \*4 (V.I. Super. Ct. Mar. 24, 2014) (finding that the defendant is a flight risk because the defendant faces life in prison if convicted).

[20] *See Camacho*, 47 V.I. at 310 (finding that the defendant had a tendency of deception, falsification and subterfuge after having used at least nine aliases and three different Social Security numbers).

[21] *See Camacho*, 47 V.I. at 310 (finding that the defendant had caused serious injury and hardship to numerous individuals who may seek retaliation).

[22] *See People v. Lesperance*, No. ST-17-CR-319, 2017 WL 5957668, at \*2 (V.I. Super. Ct. Nov. 28, 2017) (finding that the defendant was a flight risk because he is a citizen of Haiti).

[23] *See Lesperance*, 2017 WL 5957668, at \*2 (finding that the defendant's unemployment contributes to a risk of flight).

of travel,[24] the defendant's ties to the jurisdiction,[25] and whether the defendant has considerable contacts or ties to family members outside of jurisdiction.[26] *Compare People v. Rodriguez*, No. SX-17-CR-145, 2018 WL 582568, at *5 (V.I. Super. Ct. Jan. 16, 2018) (the fact that the defendant surrendered himself to the authorities two weeks after the alleged criminal act mitigates his risk of flight).

¶12     Defendant Rodriguez's connections to the Virgin Islands are minimal and his contacts outside the jurisdiction are significant. Rodriguez had only been in the territory for approximately four months before he was arrested—during which time he worked as a subcontractor at the V.I. Port Authority. At the time of his arrest, he was at the Cyril K. King Airport, intending to board a flight with a one-way ticket, when he was stopped by Customs and Border Patrol agents and arrested on the warrant that is the basis of this case. His only apparent contact in the Virgin Islands is his former employer, by whom he was employed for only four months. Otherwise, Rodriguez has no ties to the Virgin Islands community and is no longer employed. He lives in Miami, Florida where his wife and two children also reside.   A person's desire to be in the comfort of family is significant, particularly if they are unemployed and face the threat of prison time. If convicted, Rodriguez faces considerable prison time.[27] Therefore, the Court finds that his incentive to flee is

---

[24] *See Cajuste*, 2017 WL 679328, at *4 (the defendant's history of having frequently traveled to other Caribbean countries in the past contributed to the Court's determination that the defendant was a flight risk).

[25] *See Lesperance*, 2017 WL 5957668, at *2 (finding that defendant failed to present evidence, other than a past residence, of current ties to the Virgin Islands); *People v. Thomas*, 49 V.I. 151, 161 (V.I. Super. Ct. 2007) (finding that the defendant was a flight risk because his ties to the Virgin Islands community were minimal, "inasmuch as he had resided in the U.S. Virgin Islands for only one year prior to his arrest and his only family member in the Territory was an uncle living on St. John")

[26] *See Saldana*, 2015 WL 301491, at *7 (finding that the defendant's extra-territorial contacts, when combined with the fact that he faces a maximum sentence of life in prison, warrants a determination that there is a risk of flight).

[27] Rodriguez was charged with  CICO violations, which carries a sentence of incarceration of not more than 15 years and a fine of not more than $500,000.00, or both; grand larceny, which carries a sentence of incarceration of not more than 10 years and mandatory restitution; possessing stolen property, which carries a sentence of incarceration of not more than 10 years and a fine of not more than $7,000, or both; forgery, which carries a sentence of incarceration of not more than 10 years and a fine of not more than $2,000, or both; forgery -uttering a false document, which carries

substantial. *See Ford*, 49 V.I. at 282; *Camacho*, 47 V.I. at 309 (citing *Hollender*, 162 F.Supp. 2d at 264); *Saldana*, 2015 WL 301491, at *7; *Cajuste*, 2017 WL 679328, at *4; *Lesperance*, 2017 WL 5957668, at *2; *Powell*, 2014 WL 1229662, at *4. The People argue that Rodriguez may likely flee to his homeland of Cuba. However, the Court is not inclined to conclude that he would necessarily flee to Cuba as he did not appear to do so in the other arrests that appear on the National Crime Information Center national rap sheet. However, the lack of ties to the Virgin Islands causes the Court to find that Rodriguez is a flight risk. In addition, the Court finds concerning Rodriguez's history of fraudulent acts. *See Camacho*, 47 V.I. at 310. He was previously convicted of fraudulent use of a credit card, which suggests that Rodriguez may use fraudulent means to evade government detection if he attempted to flee.[28] *See id.* As such, the Court finds that Rodriguez's history of fraud increases his risk of flight,[29] and that under the totality of foregoing considerations, Rodriguez is a serious flight risk.[30]

### B. Danger to Community

¶13    The adequacy of bail under V.I. R. Crim. P 5-1(b) is also dependent on whether the defendant is a danger to the community. *See Ford*, 49 V.I. at 282 *Camacho*, 47 V.I. at 31; *Cajuste*,

---

a sentence of incarceration of not more than 10 years and a fine of not more than $2,000 or both; and obtaining money by false pretenses, which carries a sentence of incarceration of not more than 10 years.

[28] The Court does not consider Rodriguez's current charges in its flight risk analysis because the defendant has not yet been convicted of such charges and is presumed innocent until proven guilty. Any premise that suggests that a defendant is a flight risk because he has access to a large amount of allegedly stolen money must be rejected, unless the premise is predicated on a prior conviction. *Simmonds*, 48 V.I. 329.

[29] *Compare People v. Rodriguez*, No. SX-17-CR-145, 2018 WL 582568, at *5 (V.I. Super. Ct. Jan. 16, 2018) (the fact that the defendant surrendered himself to the authorities two weeks after the alleged criminal act mitigates his risk of flight).

[30] *Compare People v. Rodriguez*, No. SX-17-CR-145, 2018 WL 582568, at *5 (V.I. Super. Ct. Jan. 16, 2018) (the fact that the defendant surrendered himself to the authorities two weeks after the alleged criminal act mitigates his risk of flight). Surrendering travel documents may mitigate the risk of flight, but such a determination is made on a case by case basis. *Cajuste*, 2017 WL 679328, at *4 (the defendant's proposal to surrender his passport was insufficient to mitigate his risk of flight because "[t]here are ways to leave St. Thomas without a passport.") Moreover, Rodriguez has no offered any such proposal.

2017 WL 679328, at *2; *People v. George*, ST-2016-CR-00085, 2016 WL 5660283, *3 (V.I. Super. Ct. Sept. 27, 2016); *Saldana*, 2015 WL 301491, at *5; *Powell*, 2014 WL 1229662, at *4. Whether a defendant is a danger to the community is dependent on the Court's consideration of a number of factors, including, but not limited to: the nature of the charges,[31] the defendant's criminal history,[32] the defendant's history of violence,[33] a prior court order to attend anger management,[34] and the defendant's history of mental illness.[35] *But cf. Simmonds*, 48 V.I. at 329 (pending charges cannot necessarily determine whether a defendant is a danger to the community

---

[31] *See Camacho*, 47 V.I. at 311 (finding that the defendant is a danger to all persons because of his alleged participation in a scheme to defraud the government, which led to financial hardship for numerous persons); *Powell*, 2014 WL 1229662, at *4 (finding that defendant was a danger to the community because of the nature of the charges—defendant was charged with first degree murder, second degree murder, first and third degree assault, reckless endangerment and three counts of possession of a firearm during the commission of a crime of violence arising from the fatal shooting—and the circumstances under which they occurred); *but see Cajuste*, 2017 WL 679328, at *2 (finding that the defendant is not a danger to the community, despite the fact that he faces serious charges, because the People failed to show introduce evidence to show a strong likelihood of conviction); *People v. George*, ST-2016-CR-00085, 2016 WL 5660283, *3 (V.I. Super. Ct. Sept. 27, 2016) (noting that the defendant is charged with violent crimes all involving a firearm and for which he is facing life imprisonment, but not finding the defendant a danger to the community because he had been living in the territory without incident even after the murder of the victim); *Saldana*, 2015 WL 301491, at *5 (noting that the charges of domestic violence, assault, and murder are "extremely serious," but finding that in the absence of clear and convincing evidence that the defendant beat his wife, he remains innocent until proven guilty and the Court cannot consider him dangerous based on the current charges against him).

[32] *See Ford*, 49 V.I. at 282 (the fact that defendant had no prior criminal history weighed against finding him to be a danger to community); *Powell*, 2014 WL 1229662, at *4 (finding that defendant's last two convictions involved violence, which contributed to the Court's finding that he was a danger to the community); *but see Cajuste*, 2017 WL 679328, at *2 (finding that the People provided no documentation, such as a judgement or order of conviction to substantiate their claim that defendant is a danger to the community because on his criminal record); *Saldana*, 2015 WL 301491, at *5 (finding that defendant's previous convictions were for extortion and conspiracy to commit extortion, which are not crimes of violence and therefore weighed against a finding that the defendant is a danger to the community).

[33] *See Powell*, 2014 WL 1229662, at *4 (where a review of the record revealed "an escalation in the frequency of arrests and charges, the last two of which involved violence); *but see Saldana*, 2015 WL 301491, at *5 (recognizing that the defendant may have a propensity for violence, but finding that the People did not meet their burden of demonstrating as such with clear and convincing evidence).

[34] *See Powell*, 2014 WL 1229662, at *4 (finding that the defendant was ordered to complete anger management counselling as part of his sentence for a prior conviction of domestic violence).

[35] *See Ford*, 49 V.I. at 282 (finding that the defendant could not be deemed a danger to his community despite being charged with dangerous crimes because he was a teenager and lacked any prior criminal history or history of mental illness).

because the defendant has not yet been tried or convicted, and he is presumed innocent until proven guilty)).[36]

¶14   Rodiguez is charged with grand larceny, forgery, and possession of stolen property. While the Court finds that these charges are serious and that they carry sentences of considerable prison time, the Court also finds that they are nonviolent crimes for which Rodriguez remains innocent until proven guilty. *See Coffin v. U.S.*, 156 U.S. 432, 453 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). Moreover, the People have not presented evidence that demonstrates how the charges against Rodriguez threaten the physical safety of the community. *See Cajuste*, 2017 WL 679328, at \*2; *George*, 2016 WL 5660283, \*3; *Saldana*, 2015 WL 301491, at \*5. As such, the Court finds that the nature of Rodriguez's alleged crimes does not establish that he is a danger to the community. *See* V.I. R. CRIM. P. 5-1(B) ("The court shall impose. . . conditions of release that will reasonably protect the community from risk of physical harm to persons. . . .").

¶15   The People also argue that Rodriguez is a danger to the community because of his numerous arrests and convictions, and history of becoming violent. Given that Rodriguez is presumed innocent of the crimes pending against him, the Court will only consider his convictions in its analysis. *See Simmonds*, 48 V.I. at 329. The People cite to Rodriguez's NCIC's record that shows convictions for petit theft and burglary of an unoccupied conveyance; driving under the influence, leaving the scene of an accident, and resisting an officer without violence; driving under

---

[36] *Simmonds*, 48 V.I. at 329 ("Defendant has not been tried and convicted of [the] charges and he is presumed to be innocent of those charges as well as of the charges in the case at bar."). However, exceptions may be made for defendants charged with violent offenses, such as first degree murder, where the Court finds that there is sufficient risk to the safety of the community. *See Powell*, 2014 WL 1229662, at \*4.

the influence with serious bodily injury, a hit and run, and resisting arrest; grand theft in the third degree;[37] possession of instrument in similitude; resisting an officer with violence to his person and driving while suspended; and fraudulent use of a credit card. While the Court notes its concern in the number of Rodriguez's convictions, only those convictions for crimes of violence may demonstrate the level of danger that Rodriguez poses to the community. *See Saldana*, 2015 WL 301491, at *5. The Court finds that Rodriguez's convictions for driving under the influence suggest that he poses a threat, not only to himself, but to the safety of the community. Yet, the Court is most concerned by Rodriguez's conviction for resisting an officer with violence to his person, which suggests not only that Rodriguez may have a propensity for violence, but also that he may threaten the safety of law enforcement officers. Other than asserting that the crimes for which he has been charged are nonviolent, Rodriguez has not presented evidence or argument to outweigh the People's contention that he threatens the physical safety of the community. Therefore, the Court finds that, based on his criminal history, Rodriguez is a danger to the community. *See id.*

## C. Reasonableness of Bail

¶16    Bail is reasonable if it is the least restrictive means to ensure the defendant's attendance at "all conferences, hearings, and the trial of [the] case." *See George*, 2016 WL 5660283, *4; *Saldana*, 2015 WL 301491, at *7. Rodriguez requests that the conditions of his bail be altered to release upon the posting of an unsecured bond of $25,000.00 because the current amount at which his bail is set is excessive. Rodriguez argues that he is indigent and lacks the financial resources to post bail in the current amount for his release. However, a lack of financial resources to pay bail does not automatically render the bail amount excessive or unconstitutional. *See Powell*, 2014

---

[37] Rodriguez has been convicted of grand theft in the third degree twice.

WL 1229662, at *4. Bail is excessive when it is set at an amount higher than necessary to ensure the defendant's appearance at court proceedings. *See Cartois*, 61 V.I. at 260l; *Tobal*, 51 V.I. at 156-57. Where the defendant's ability to pay matters under the Eighth Amendment is the point at which bail becomes so high that it guarantees the denial of his freedom. *Bandy*, 81 S.Ct. at 198 (citing *Stack*, 342 U.S. at 72). For the case of an indigent defendant, "the fixing of bail in even a modest amount may have the practical effect of denying him release." *Bandy*, 81 S.Ct. at 198 (citation omitted). The consequences of such are not only the denial of the defendant's freedom, but also the deprivation of his trial rights. *Bandy*, 81 S.Ct. at 198 ("Imprisoned, a man may have no opportunity to investigate his case, to cooperate with his counsel, to earn the money that is still necessary for the fullest use of his right to appeal."). As such, the imperative for courts is to set bail at an amount that achieves the purposes of bail, without going beyond them.

¶17    If the least restrictive means are to be imposed, then release must be favored. *Bandy*, 81 S.Ct. at 198. However, where release does not ensure the defendant's presence at trial because the defendant poses a flight risk, then the Court must set bail at an amount that deters the risk of flight. *See Bandy*, 81 S.Ct. at 198. Here, the Court finds that Rodriguez is a flight risk. He has significant connections outside the territory and has no ties to the Virgin Island community. Were he to be released, the Court finds that there would be a substantial incentive to flee this jurisdiction. Moreover, the Court finds that his lack of financial resources compounds his ability to afford a flight to return to the jurisdiction to appear for trial. The Court must set bail in such a way to satisfy the purposes of bail first. Therefore, the Court finds that the current bail is not a violation

of Eighth Amendment. Thus, the Court must deny Rodriguez's request for release on an unsecured bond. But, the Court will reduce bail to $100,000.00 cash or property.[38]

## CONCLUSION

¶18    Rodriguez faces considerable prison time if convicted. He also has significant contacts outside the jurisdiction and no apparent ties the territory. As such, the Court finds that Rodriguez's incentive to flee is high. Based on his criminal history and prior acts of violence, the Court also finds that Rodriguez presents a threat to the physical safety of the community. For these reasons, the Court finds that the current bail is not a violation of the Eighth Amendment. Accordingly, the Court will deny Rodriguez's motion against excessive bail and for release on an unsecured bond. However, given that Rodriguez is indigent and that he retains his presumption of innocence until proven guilty, the Court will reduce bail to $100,000 cash or property.

An order consistent with this Opinion will immediately follow.

DATED: March ___9___, 2021

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
TAMARA CHARLES
Clerk of the Court

BY: _____
**LORI M. BOYNES**    3 / 9 / 2021
Chief Deputy Clerk _____/____/_____

---

[38] The Court also takes into consideration that his case has not progressed to trial as expected since all jury trials have been held in abeyance since March 2020 due to the unset of the COVI-19 pandemic.